UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

ARTHUR COBB,
    Plaintiff,

v.                                       C.A. No. 09-388ML

UNITED STATES OF AMERICA;
CURTIS E. DOBERSTEIN, M.D.;
UNIVERSITY NEUROSURGERY, INC.;
NEUROSURGERY FOUNDATION, INC.;
JOHN and/or JANE DOE, M.D., Alias; and
JOHN DOE CORPORATION, Alias,
    Defendants


**OPINION AND ORDER**

Mary M. Lisi, Chief United States District Court Judge.

This case is before the Court on motion by the United States to dismiss Counts II, III, and IV of the plaintiff's 20-count complaint against the United States and various other defendants in what is essentially a medical malpractice suit.[1] For the reasons that follow, the United States' motion to dismiss is GRANTED and Counts II, III, and IV of the complaint are DISMISSED.

I. Facts and Procedural History

Plaintiff Arthur Cobb ("Cobb") is a 55 year old former sandblaster who sought treatment at the Rhode Island Veterans Administration Medical Center ("VAMC") in January 2006, after

---

[1] Only Counts I through IV are asserted against the United States, which is being sued on behalf of the United States Veterans Administration Medical Center.

suffering from leg weakness for a year and a half.  On March 13, 2006, Cobb consulted a private physician, defendant Curtis Doberstein, M.D. ("Dr. Doberstein"), for back and leg pain.  Dr. Doberstein stated that Cobb was symptomatic of lumbar spinal stenosis and intractable back pain and performed an L3 - L5 laminectomy and an L3 - L5 fusion on April 11, 2006.

Cobb's symptoms did not improve after the surgery, and on May 9, 2006, Cobb underwent an MRI of the cervical spine at the VAMC, on order by Dr. Israel Yaar ("Dr. Yaar")[2] of the VAMC.  According to Cobb's administrative claim filed with the United States Department of Veterans Affairs ("VA"), "[t]he differential diagnosis at that time included neuromyelitis optica, tumor, or an ischemic process."  A July 12, 2006 addendum in the VAMC medical record signed by Dr. Yaar indicates that the MRI revealed a lesion on Cobb's cervical spine.  As Cobb's condition continued to worsen, he continued to consult both Dr. Doberstein and Dr. Yaar.  On August 28, 2006, Cobb underwent another MRI of the cervical spine on Dr. Yaar's orders, which revealed a solid lesion within the cervical cord.  Dr. Yaar informed Cobb on that date that he had a cervical spinal cord tumor.  On September 22, 2006 and again on February 16, 2007, Cobb underwent two separate surgeries by private physicians Dr. Doberstein and Dr. Adetokunbo Oyelese to address the

---

[2] Dr. Yaar is not a named defendant in this litigation.

tumor. According to the complaint, Cobb spent months in rehabilitative treatment and is currently confined to a wheelchair.

On August 20, 2008, Cobb's counsel sent a "Notice of Claim" to the VA, in which he alleged that the VAMC was negligent in treating Cobb because "it failed to timely diagnosis [sic] and treat a condition that resulted in severe and permanent injuries." Cobb's counsel sent an "Amended Notice of Claim" (the "Claim Notice") to the VA on August 21, 2008, in which he raised identical claims.[3] Both communications included a demand to compensate Cobb "for the injuries, pain and suffering, and other damages sustained by Arthur Cobb in the amount of $20 million dollars." Claim Notice, Page 3.

After acknowledging receipt of Cobb's claim on October 26, 2008, the VA issued a denial on March 31, 2009, indicating that a review of Cobb's claim "did not reveal the existence of any negligent or wrongful act on the part of any employee" of the VA. The denial letter also stated that Cobb's claim was untimely as it "was filed more than two years after the date of the alleged negligence."

On August 24, 2009, Cobb filed a 20-count complaint in this Court, asserting against the United States under the Federal Tort

---

[3] The Amended Notice of Claim includes additional medical details regarding the surgeries Cobb underwent to address the tumor.

3

Claims Act ("FTCA") claims of (Count I) Negligence, (Count II) Lack of Informed Consent, (Count III) Corporate Liability, and (Count IV) Vicarious Liability. The remaining 16 counts against non-federal individual and corporate defendants are based on the same four legal theories.

On March 26, 2010, the United States filed a motion to dismiss Count II and Count III for lack of subject matter jurisdiction on the ground that Cobb failed to exhaust his administrative remedies and/or for failure to state a claim upon which relief can be granted, pursuant to Federal Rule 12(b)(6). With respect to Count IV, the United States sought dismissal because the claim is duplicative of Cobb's negligence claim asserted in Count I. Cobb filed a response in opposition to the motion on April 12, 2010, to which the United States filed a reply on April 22, 2010.

**II. Standard of Review**

(A) Rule 12(b)(6)

In order to withstand a motion to dismiss under Federal Rule 12(b)(6), "the complaint must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" Cunningham v. National City Bank, 588 F.3d 49, 52 (1st Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Well-pleaded facts are accepted as true, and factual

allegations are viewed in the light most favorable to the plaintiff. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 34-35 (1st Cir. 2009). A dismissal of a complaint pursuant to Federal Rule 12(b)(6) is appropriate only if the complaint, so viewed, fails to allege a "'plausible entitlement to relief.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)(noting that Bell Atl. Corp. v. Twombly has "recently altered the Rule 12(b)(6) standard in a manner which gives it more heft").

Although detailed factual allegations are not necessary, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ---, 129 S.Ct. at 1949, 173 L.Ed.2d 868. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. A determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

(B) Exhaustion of Administrative Remedies

The FTCA constitutes a limited waiver of the United States' sovereign immunity with respect to private tort claims. Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009); Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 36 (1st Cir. 2006)(United States cannot be sued "absent an express waiver of its immunity"). Under the FTCA, an individual may sue the government

> "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

As a waiver of the government's sovereign immunity, the FTCA is strictly construed and all ambiguities are resolved in favor of the United States. In re Rivera Torres, 432 F.3d 20, 23-24 (1st Cir. 2005).

A tort claim against the United States pursuant to the FTCA is "'forever barred' unless it is presented in writing to the appropriate federal agency within two years after the claim accrues." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); 28 U.S.C. § 2401(b). Although the VA's denial of Cobb's claim was based, in part, on the timeliness of his claim, the United States does not advance that argument in its motion. Moreover, a review of the facts alleged by the plaintiff reveals that Dr. Yaar informed Cobb of his spinal tumor on August 28, 2006 and that Cobb's initial claim to the VA was filed on August 20, 2008, within the requisite 2 year period.

However, a determination that the administrative claim may have been timely does not end the analysis. The FTCA includes an administrative exhaustion requirement "to ensure that 'meritorious claims can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation.'" Barrett ex

6

rel. Estate of Barrett v. United States, 462 F.3d at 36 (citation omitted). The "'exhaustion of plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of their FTCA claims.'" Redondo-Borges v. United States Dept. of Housing and Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005)(quoting Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993)). Pursuant to 28 U.S.C. § 2675, a claimant must "first present[] the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing" before instituting an action against the United States. 28 U.S.C. § 2675(a). Therefore, this Court must next determine whether Cobb exhausted his administrative remedies under the FTCA. Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 37 (1st Cir. 2006)(FTCA's exhaustion requirement is "'a non-waivable jurisdictional requirement' limiting the suit to claims fairly made to the agency")(citation omitted).

The First Circuit has held that the FTCA's notice requirement is satisfied when the claimant provides "a claim form or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." Santiago-Ramirez v. Sec'y of Dept. of Defense, 984 F.2d 16, 19 (1st Cir. 1993)(citing Lopez v. United States, 758 F.2d 806, 809-10 (1st Cir. 1985)). In Santiago-Ramirez, the First Circuit deemed a claimant's letter to the administrative agency sufficient

because "it states the identity of the appellant, the date of the incident, the location of the incident, the government agents involved, and the type of injury alleged. It also states the amount of the damages the appellant is requesting." Santiago-Ramirez, 984 F.2d at 20 (determining that "such language put the agency on notice that it should investigate the possibility of potential tortious behavior on the part of its agents"). The Court of Appeals also noted that it "approache[d] the notice requirement leniently, 'recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims.'" Santiago-Ramirez, 984 F.2d at 19 (quoting Lopez, 758 F.2d at 809)). The information provided by the claimant has to be sufficient so that the government "may reasonably begin an investigation of the claim." Santiago-Ramirez, 984 F.2d at 19.

### III. Discussion

(A) Count II - Lack of Consent

In Count II of his complaint, Cobb alleges that the United States "failed to inform [him] of the risks of harm attendant to the treatment and care in question and proceeded to perform said treatment and care without having obtained his informed consent." Complaint 6. The Claim Notice, however, does not specify a claim for lack of consent, nor does a careful review of that

8

communication reveal any allegations that would imply such a claim. Instead, Cobb recounts, in some detail, the diagnostic procedures he underwent at the VAMC and the surgeries provided by non-VA physicians. The Claim Notice concludes that "the VAMC, its employees, agents, and assigns are responsible for the injuries suffered by Mr. Cobb. More specifically, the VAMC was negligent in its treatment of Mr. Cobb as it failed to timely diagnosis [sic] and treat a condition that resulted in severe and permanent injuries to Mr. Cobb, including unnecessary pain and suffering, for which the VAMC is liable." Claim Notice, Page 3. Notwithstanding Cobb's assertion that a claim for lack of consent is "inherent" in the claim of delayed diagnosis, the Claim Notice makes no reference to insufficiently provided information that would allow such an inference.

As pointed out by the Government in its memorandum, the First Circuit has not yet addressed the issue whether a FTCA alleging negligent diagnosis and/or treatment by hospital personnel automatically implies a claim for informed consent. The Ninth Circuit which, like the First Circuit, has established liberal notice requirements, agreed with "[t]he majority of circuits[4] that

---

[4]

Only the Fifth Circuit held has that "[b]y its very nature, the informed consent claim is included in the [plaintiffs'] allegation of [medical malpractice] in their administrative claim." Frantz v. United States, 29 F.3d 222, 224 (5th Cir. 1994). Although the Fourth Circuit adopted the Fifth Circuit's rule, in Drew ex rel. Drew v. United States, 231 F.3d 927 (4th Cir. 2000),

9

have addressed the issue [which] have held that to adequately exhaust administrative remedies with respect to an informed consent claim, a medical malpractice claim is not necessarily sufficient." Goodman v. United States, 298 F.3d 1048, 1055 (9th Cir. 2002)(listing cases). The Seventh Circuit, in accord with the Eleventh Circuit, determined that "the administrative claim must narrate facts from which a legally trained reader would infer failure to obtain informed consent." Murrey v. United States, 73 F.3 1448, 1453 (7th Cir. 1996)(citing Bush v. United States, 703 F.2d 491, 495 (11th Cir. 1983)).

Although the Appellate Courts in Goodman and in Murrey ultimately decided that the respective administrative claims were sufficient for an inference of a claim for lack of consent, the circumstances in both cases are distinguishable from the case now before this Court. In Goodman, the plaintiff filed his administrative claim without legal assistance; the terms used in the claim "could imply that the claimant's wife agreed to a procedure involving a greater standard of care than what she received;" and the administrative agency, in its response, specifically addressed the issue of informed consent. Goodman v. United States, 298 F.3d at 1056-57. In Murrey, the administrative complaint alleged that "V.A. physicians assured [Murrey] and his family that surgery was the only available therapy and that it

---

the En Banc Court was divided and did not issue a written opinion.

would extend his life by 15 years," Murrey v. United States, 73 F.3d at 1452, which allowed an inference that information provided to the patient was critical in his decision making process.

None of these circumstances are present in the instant case. Cobb was represented by counsel who filed two detailed Claim Notices with the VA; nothing in the Claim Notice indicates that a lack of consent played a role in Cobb's diagnosis and/or treatment by VA physicians; and the VA's denial letter makes no reference to the issue of informed consent. Based on the foregoing, and in consideration of the circumstances of this particular case, the Court finds that Cobb failed to exhaust his administrative remedies with respect to the claim made in Count II of his complaint.

(B) Count III - Corporate Liability

In Count III of his complaint, Cobb alleges that the United States "failed to promulgate and enforce policies and procedures to insure the delivery of ordinary medical care, and/or otherwise failed to discharge its responsibilities as a medical provider." Complaint 7. Cobb further states that the United States had a duty "to provide quality medical care to the Plaintiff, to protect his safety, to protect him from incompetent and/or negligent treatment, to ensure that those providing care and treatment within its walls were properly credentialed, and to otherwise exercise reasonable care for his protection and wellbeing." Id.

Although it is not entirely clear from the complaint, Cobb's

objection to the motion to dismiss appears to indicate that his corporate liability claim is based on "selecting a person who the employer knew or should have known was unfit or incompetent for the employment, thereby exposing third parties to an unreasonable risk of harm." Plaintiff's Mem. 7, quoting Rodrigues v. Miriam Hosp., 623 A.2d 456, 462-463 (R.I. 1993). In Rodrigues, the Supreme Court of Rhode Island adopted the theory of corporate negligence as applied to hospitals as an extension of negligent-hiring theory. Rodrigues v. Miriam Hosp., 623 A.2d at 463; see Gianquitti v. Atwood Med. Ass., Ltd., 973 A.2d 580, 590 n.10 (R.I. 2009)(listing cases addressing theories of corporate negligence, and noting that the Court had not yet considered whether a physicians' practice group, "under a theory of direct negligence, also known as corporate negligence," had a duty to adopt policies to ensure adequate care for its physicians' patients).

Cobb's Claim Notice makes no mention of the VAMC's alleged failure to "promulgate and enforce policies and procedures" to ensure adequate medical care, nor does it include allegations that any of the VAMC's attending physicians lacked proper credentials. Instead, the Claim Notice advises the VA that the thrust of Cobb's complaint is that the VAMC "failed to timely diagnosis [sic] and treat a condition that resulted in severe and permanent injuries to Mr. Cobb." Amended Claim Notice, Page 3. As such, the facts and allegations contained in the Claim Notice are sufficient to state

a claim of negligence under the FTCA, but they do not provide notice to the United States that Cobb is advancing a theory of corporate liability as well. Without providing the VA with sufficient information to afford it an opportunity to investigate his claim, Cobb's administrative remedies remain unexhausted.

In sum, because the Claim Notices were insufficient to alert the VA to the nature of the claims Cobb asserted in Counts II and III in his complaint, those claims are barred due to Cobb's failure to exhaust his administrative remedies pursuant to the FTCA. Based on that determination, the Court need not address the United States' alternative argument, that Counts II and III of Cobb's complaint fail to state a claim upon which relief may be granted.

(C) Vicarious Liability

Under the FTCA, the United States, by waiving its sovereign immunity, assumes liability for the wrongful act of an "employee" while "within the scope of his office or employment," *i.e.* as *respondeat superior*. Knowles v. United States, 91 F.3d 1147, 1152 (8th Cir. 1996)("The FTCA allows the United States to assume liability for the negligence of its employees under a theory of *respondeat superior*"). Liability of the United States under the FTCA is limited to vicarious liability. Knowles v. United States, 91 F.3d at 1153 ("liability under *respondeat superior* theory is vicarious, and not direct liability"). See Sterling v. United States, 85 F.3d 1225, 1229 (7th Cir. 1996)(FTCA creates vicarious

liability).

In Count IV of his complaint, Cobb alleges that "Defendant was at all relevant times vicariously responsible for the acts of its agents and servants, including, but not limited to, the acts of Dr. Yaar," and that "[a]s a direct and proximate result of Defendant's negligence, [Cobb] suffered severe and permanent injuries..." As the United States points out in its memorandum, the claims set forth in Count IV are duplicative of those raised in Cobb's negligence claim directed against the United States. Count I alleges that the United States was negligent "by and through its agents, actors and employees," Complaint 5. This assertion, however, is just another way of describing vicarious liability, and the only theory under which liability of the United States under the FTCA may be established, if so proven. Because Cobb's vicarious liability claim is already inherent in his negligence claim, Count IV is duplicative and may be dismissed.

## Conclusion

For the foregoing reasons, the United States' motion to dismiss Counts II, III, and IV is GRANTED and Counts II, III, and IV are herewith DISMISSED.

SO ORDERED:

_Mary M. Lisi_
Mary M. Lisi
Chief United States District Judge
Date: ~~May~~ June 2, 2010